# Case No. 9,904.

### MUIRHEAD v. ALDRIDGE et al.

[14 N. B. R. 249; 2 N. Y. Wkly. Dig. 480; 33 Leg. Int. 213.] [1]

Circuit Court, D. New Jersey.    March 28, 1876. [2]

HUSBAND AND WIFE—WIFE'S PROPERTY—ACCU-
MULATED BY HUSBAND—BANKRUPTCY.

Where the husband receives money from his wife, and engages in transactions in real estate, in her name, until he accumulates property of considerable value by his skill and energy, the property is liable to his assignee.

Appeal from the decree of the district court.

[This was a proceeding by William Muirhead, assignee in bankruptcy of Thomas Aldridge, against Thomas Aldridge and others to obtain a conveyance of certain property alleged to belong to the bankrupt.]

McKENNAN, Circuit Judge. The main purpose of the complainant's bill is to obtain a conveyance to him, as the assignee in bankruptcy of Thomas Aldridge, of certain real estate, described in the bill, the title to which is apparently in Mrs. Aldridge, but is claimed to be meritoriously in her husband. This real estate was acquired and conveyed to Mrs. Aldridge during her coverture, and so is alleged to be her separate property. By the laws of the state of New Jersey (see Dixon's Dig. 547), every married woman is invested with the capacity "to receive, by gift, grant, devise, or bequest. and to hold to her sole and separate use, as if she were a single female, real and personal property." independently of the control or disposal of her husband, and without liability for his debts. According to the obvious import of the statute, the courts

¹ [Reprinted from 14 N. B. R. 249, by permission. 2 N. Y. Wkly. Dig. 480, contains only a partial report.]
² [Reversed in 101 U. S. 397.]

of the state, in numerous decisions, have construed it to authorize the acquisition by a married woman of personal property and real estate, and to intercept the common-law right of her husband to reduce her personal property to possession, and to appropriate the rents, issues, and profits of her real estate as an incident of his initiate estate by the courtesy. And it has also been held that where a deed is made to a married woman she is, prima facie, to be taken as having paid the consideration stated in it out of her separate property, thus assimilating her as to this, to every other grantee, and placing her in a more advantageous position than is assigned to her by the courts of other states. in which similar laws exist. But as a mere presumption, the primary effect of which is to impose the burden of proof upon the party who gainsays it, it will not outweigh satisfactory evidence that her separate means were entirely insufficient, or even grossly inadequate, to pay the consideration of the conveyance. When, therefore, the title to real estate is conveyed to a married woman, she must be considered the bona fide owner of it, as if she were a single female. But it must be intrenched in the real good faith by which an honest acquisition is distinguished. If it is purchased by her or for her, no matter by whom. its validity cannot and ought not to be questioned. But if she has no separate estate, or that is disproportionately small, compared with the consideration ostensibly furnished by her, and her means are materially supplemented by her husband's contribution from resources, whether money or its equivalent, which he could not rightfully so apply, such a transaction does not specially invite, as it certainly does not deserve, any legal sanction.

These general principles seem to me to be the clear result of all the cases discussed on both sides in the argument, and the decision of the cause to depend, therefore, upon the solution of the question. whether the several parcels of real estate described in the bill were acquired by Mrs. Aldridge, by the appropriation of her own separate means to their purchase, or whether her husband ought to be regarded as their real owner, by reason of his having contributed the chief part of the consideration paid for them. It would involve unnecessary elaboration to discuss in detail the evidence in the record touching this inquiry. It is sufficient to say that. after a careful collation and consideration of it, I am convinced that the prayer of the bill ought to be allowed. During nine years, from 1861 to 1870, twenty-one pieces of real estate, of various kinds, were purchased for and conveyed to Mrs. Aldridge, for the aggregate consideration of about thirty-three thousand dollars. Of these properties, portions were sold and exchanged, and buildings were erected on some of them; and there remains, as the net result of these operations, property nearly equal to twenty thousand dollars in value, nominally belonging to her. Now. what was the extent of

her agency in producing this result? A contribution to the purchase money in all of about three thousand dollars, probably considerably less than that. Whatever additional contribution was required was either supplied by her husband or was obtained upon the credit of the property purchased, by mortgages executed by both of them, and by re-sales at advanced prices. Nor was the money employed the most fruitful source of the accumulating profits accruing from these investments. They were obviously much more largely due to the skill and sagacity with which the selection of properties was made; with which negotiations in reference to them were conducted; with which contracts of purchase and modes of payment were arranged; with which re-sales and exchanges were affected; and with which improvements were devised and made, and to the discreet judgment and vigilance exercised generally in the management of these transactions. This efficiency was certainly not supplied by the wife. She was informed by her husband of the plans which he had conceived, and was consulted by him; but the degree of control and supervision over their execution, which she exercised was only such, in her own words, "as it was necessary and proper for a lady to do." Her husband devised and executed them, and it was almost wholly by reason of his skill, experience, judgment, diligence, and services, that they bore such fruit; and this remarkable consequence followed, that while the services of the husband were the chief agency in creating the wealth of the wife, and its proportions were steadily expanded under his vigilant and skillful manipulation, his debts were uncared for, and the earnings, to which his creditors had a just right, were diverted to swell the nominal acquisitions of his wife. And when he filed his petition in 1873, for the benefit of the bankrupt law [of 1867 (14 Stat. 517)], his schedule was barren of any available assets. Laws for the protection of married women were not enacted to sanctify such results. If they can be so perverted they are instrumentalities of great injustice. They were never meant to afford any shelter for the misappropriated resources of a husband who is forgetful of his just obligations to others. They have a more benignant aim and operation. They were intended to provide a shield against the rapacity or improvidence of the husband, and against liability for debts not her own, and in which she ought not to be implicated.

A debtor cannot be compelled to labor for his creditors, but he cannot divert the product of it to his own substantial benefit, by putting it into the form of property only nominally acquired by his wife. As was said, with characteristic emphasis and force, by Mr. Chief Justice Black, in Keeney v. Good. 21 Pa. St. 349, 354: "But after supporting his family he must give the best exertions of his mind and body to his creditors. This is but his reasonable duty—a duty sanctioned by all laws, moral, civil, and divine. No effectual

mode of evading it has yet been invented. The usual device of covering the property of the debtor, under the name of some friend or a member of his family, will only answer the purpose as long as it remains undiscovered. I need not say how deeply such shams are branded by the law with marks of its detestation." Nor will the nominal agency of the husband for the wife be any more effectual. Doubtless he may act for her in that capacity, in reference to her separate property, without thereby acquiring any interest in it or subjecting it to liability for his debts. But where it is employed as a device to cover his acquisitions under the name of his wife, it will prove unavailing. Again using the language of Chief Justice Black: "An arrangement to buy property on her credit, and have it managed and paid for by him, as her agent, is too unsubstantial and too easily shammed to be at all satisfactory. All these things can be done by mere words, and words are but breath."

The proofs in the cause convince one that the real estate claimed by the complainant is really the property of the respondent, Thomas Aldridge; that the title to it was vested in his wife, in fraud of his creditors, and that a decree ought to be entered for its conveyance by the respondents, according to the prayer of the bill. Let a decree to that effect be prepared.

[On an appeal, the cause was taken to the supreme court, where the decree of this court was reversed, and the cause remanded, with instructions to dismiss the bill with costs. 101 U. S. 397.]